*KILGOUR vs. RATCLIFF'S HEIRS.*

A power to institute a suit and carry it on to final judgment does not include that of making a compromise, nor that of receiving the money due.

The decree of a court of competent jurisdiction cannot be examined collaterally, by the parties or those claiming under them.

The receipt of a part of an estate, received by the agent, is not evidence of an intention to ratify or compromise, by

APPEAL from the court of the third district.

PORTER, J. delivered the opinion of the court. The plaintiff as assignee of Margaret Hall sues to recover the one half of the property adjudged to her in a suit which was carried on and prosecuted to judgment by the heirs of Hamilton Pollock, deceased, against the present defendants.

For a correct understanding of this case it is necessary to take a review of the grounds on which that action was brought, the manner in which it was commenced, the circumstances which attended its prosecution, and to narrate the proceedings which followed the rendition of the judgment.

Hamilton Pollock, the ancestor of the person under whom the present plaintiff claims, finding himself in embarrassed circumstances, and apprehensive of being sued by his creditors, made a simulated sale of all his property to William Ratcliff, the ancestor of the present defendants. Before this sale was revoked or annulled, both the parties to it died. Pollock leaving as his heirs Hamilton Pollock junior, and Margaret Pollock, the latter at the time of her uncle's death being married to David Hall. Ratcliff's representatives were his widow and children, who are the present defendants.

The heirs of Pollock having determined to bring an action to rescind the conveyance made by their ancestor to Ratclift, Margaret Hall, and her husband David Hall, who were then residing in the parish of Rapides, authorised Hamilton Pollock junior, the brother and co-heir of Margaret, to institute a suit against the heirs of Ratcliff, in order to have the sale made by their ancestor annulled. An action was accordingly brought in their joint names, and judgment obtained in the district court of the parish of Feliciana, from which judgment an appeal was taken. But before it was carried

East'n District.
*March,* 1824.

KILGOUR
*vs.*
RATCLIFF'S
HEIRS.

which he abandons any part of it.

Kilgour
vs.
Ratcliff's
Heirs.

up to this court a compromise took place between the defendants and Hamilton Pollock, by which it was agreed he should abandon part of the property recovered—that is to say, 24 bales of cotton, and that the other objects specified in the decree should be received in discharge of it. And on his receipt being produced in court, acknowledging this agreement to have been carried into effect, the attorneys in the cause consented to have satisfaction entered on the judgment they had obtained against the defendants.

The plaintiffs claim by assignment all the right, title, and interest, which Margaret Hall had in this judgment; and they aver that Hamilton Pollock had no authority to make any compromise of the right of the person they claim under, nor to receive the portion which she was entitled to under the judgment, that the delivery by the defendants of the property received was made in their own wrong, and is, as to the party whom they represent, void and of no effect.

To complete the history of the case it is important to state that subsequent to the judgment and compromise already mentioned, Hamilton Pollock, who had got into his pos-

East'n District.
*March*, 1824.

KILGOUR
*vs.*
RATCLIFF'S
HEIRS.

session as already stated, the property belonging to the succession of his uncle, of which his co-heir Margaret Hall was joint proprietor, on the 4th of August 1820, filed a petition in the court of probates of the parish of Feliciana, where this ancestor had died, praying that his sister Margaret, and her husband, who were residents of the parish of Rapides, should be cited according to law to show cause, if any they had, why the succession should not be liquidated, the debts paid, and a partition of the property directed.

A copy of the petition, and the citation which issued in conformity with it, were served by ,, leaving copies at the last place of abode of the defendants"; and on their not appearing, judgment by default was rendered against them on the 20th of November.

On the 30th of December then next ensuing, the plaintiff presented another petition to the probate court, in which he stated that he was a creditor of Margaret Hall, an absentee, and prayed letters of curatorship. Upon which petition the court decreed; that it appearing, to its satisfaction, that the said Margaret was an absentee, it was ordered that the petitioner should be appointed curator on his giving bond

East'nDistrict.
March,1824.

KILGOUR
vs.
RATCLIFF'S
HEIRS.

and security according to law. After this appointment, on the 18th of January, a decree of partition was ordered by the court, an attorney having been previously nominated to the absent heir. In the division made, in pursuance to this order, the amount stated to be coming to each, is eleven hundred and sixty-eight dollars.

The defendants pleaded several exceptions to the action, which must be disposed of, before we can reach the merits.

The *first* is, that an assignee cannot sue in his own name. unless for a debt which is negotiable. There is no ground whatever for this distinction. The sale of such a thing is expressly recognized by our code, and whenever the law permits a man to acquire a title, it allows him to enforce that title in a court of justice.

The *second* is, that the christian names of Ferguson and Ritch, for whose use the suit is brought, are not stated in the petition. This defect, if it be one, we think cured by the plaintiff Kilgour, who sues for their benefit, having given his name at full length.

The *third* exception, which assumes as a fatal defect in the plaintiff's title, that he claims the benefit of a judgment rendered in 1820,

by virtue of a transfer made in 1817, we con-
sider as equally untenable. The petition states
that the right of Margaret Hall to the succes-
sion of her uncle was purchased in 1817. This
sale was certainly not invalidated by the
amount of the succession being subsequently
liquidated by a judgment; it was changing the
evidence by which the amount of the estate
could be ascertained, but it was still not less
the succession sold : and the buyer had as much
right to claim the benefit of any higher evi-
dence, which his vendor might afterwards ac-
quire, as he would have had to demand any
other accession, which the property received
after he bought it.

The *fourth* exception is equally unfounded ;
the judgment, which the present parties claim
the benefit of, had satisfaction entered on it,
and the proper way to have this bar to their
recovery removed was by bringing suit. The
defendants in the original action were out of
court, and the only mode of bringing them in,
was by an action in the ordinary way.

The main questions in this cause are first,
the effect of the compromise of the original
suit by Hamilton Pollock and the delivery of
the property to him. And secondly, supposing

East'n District.
*March*, 1824.

KILGOUR
*vs.*
RATCLIFF'S
HEIRS.

his acts to have been irregular, and without proper authority, whether the subsequent proceedings in the court of probates rendered them valid.

On the first, we find nothing in the evidence, which shows that Hamilton Pollock was authorised to do any thing more for his sister than bring suit and carry it on to final judgment. Such authority to an agent does not authorise him to enter into a compromise. Our law contains an express clause, that the power to have that effect must be special. *Civil Code*, 422, *art.* 10. Such also, according to the same authority, must be the letter which will empower the attorney to make a transaction of any matters in litigation  The agreement therefore by which Hamilton Pollock consented to abandon twenty-four bale  cotton on having the other property given up to him, even though fairly done for the purpose of preventing further litigation in the appellate court, was, so far as it affected his sister, null and void.

We have next to consider the effect of the delivery of part of the property confirmed in the judgment. Whether this were good against Margaret Pollock will be best disco-

vered by considering his right as co-plaintiff, and his authority as agent.

East'n District
*March,* 1824.

KILGOUR
*vs.*
RATCLIFF'S
HEIRS.

In the first character, he had no power to receive it. He was only creditor for the portion that was due to himself, and had no control over that part which belonged to another. Nor was his authority at all increased by the circumstance that some of the objects received were not susceptible of a corporeal division. The law in this case more attentive to the heir who is absent, than him who is present, forbids the debtor to pay or deliver, unless all having an interest in the thing are prepared to receive it. *Civil Code,* 282, *art.* 120, 288, *art.* 139. *Toullier, Droit Civil, liv.* 3, *tit.* 3, *chap.* 4, *no.* 775.

In the second, we are of opinion that he was equally without authority. The power conferred on him was only to sue, and the 7 *law of the* 14 *title of the* 5 *Partida* expressly declares, that an agent with this power cannot legally receive the amount recovered by the judgment.

The approbation of the attorneys at law by this arrangement, and the satisfaction entered or received with their approbation, has been urged as conclusive on the right of the plain-

East'nDistrict.
March, 1824.

KILGOUR
vs.
RATCLIFF's
HEIRS.

tiff. In deciding on this point, we have not found it necessary to touch on the authority of licensed attorneys to receive the amount recovered by them. On turning to the entry, we find it expressly refers to the compromise made by Hamilton Pollock, and the receipt of the other property received by him, as the grounds of their consent. The legality of this act must therefore depend on this agreement. If it were bad, their approbation cannot make it valid, unless we hold that when they are employed to prosecute a claim, they are empowered to abandon any portion of it they may think proper, and release it. But this is an authority, which we are most clear they do not possess, and if we have it not in relation to themselves, it is equally wanting to sanction the acts of others.

This brings us to the second important question in the cause, the effect of the proceedings in the court of probates. The defendants contend that the property delivered by them to Hamilton Pollock has been received by Mar. Hall the sister, under the judgment of partition, and that this partition operates as a ratification of the conduct of Hamilton Pollock. and if not, a complete ratification of the com-

promise made by him, that it is at least a bar, against the recovery of that portion of the property received by her.

East'n District.
*March*, 1824.

KILGOUR
*vs.*
RATCLIFF's
HEIRS.

We have frequently determined that a decree rendered by a court of competent jurisdiction could not be examined collaterally by the parties to the action, or those claiming under them. That such decision was conclusive, unless set aside on an appeal, or by an action of nullity, if that remedy still exists. In opposition to the application of that doctrine to this case, it has been contended that the whole proceedings were *coram non judice* and void, and that the defendant was not cited. On the first point, we do not think the court was without jurisdiction. It was that of probates of the parish, where the succession was opened by the death of the ancestor, and where his principal property was situated. It had therefore jurisdiction of the settlement and partition of the estate; more particularly if one of the heirs was an absentee. *Dufour* vs. *Camfranc*, 11 *Martin*, 608. *Trepagnier's* heirs vs. *Butler & al.* 12 *ibid* 534. *Bernard* vs. *Vignaud, ante, vol.* I, 8. *Civil Code*, 158, art. 9.

East'n District.
March, 1824.

KILGOUR
vs.
RATCLIFF'S
HEIES.

The want of citation however has been strongly urged as a ground of absolute nullity, even supposing the court to have had the power to take cognizance of the cause. Admitting the want of citation has the effect contended for, the judgment still presents itself in such a shape as requires us to apply to it the rule on which we have so often acted. The defendant is stated to be an absentee, and the judge decreed that being satisfied she was, he appointed her a curator. Now if such were the fact, the appointment was legal, and there were proper parties to the judgment. Whether in truth she were, or were not absent, was a question for the judge who appointed a person to represent her. We have not the evidence before us on which he acted, and if we had, we could not examine it collaterally. We will remark however, that the averment found in the petition of Hamilton Pollock, that his sister was a resident of the parish of Rapides in the month of *August*, is by no means inconsistent with the fact of her being an absentee from the state in *December* following, and the return of the sheriff that he left the citation at her *last*, not her *usual* place of abode, strengthens the conclusion that she had left the state.

East'n Distriet.
*March*, 1824.

KILGOUR
*vs.*
RATCLIFF'S
HEIRS.

In regard therefore to all the things em-
braced by that judgment, and which were par-
titioned in consequence of it, we are of opinion
the plaintiff cannot recover, but as to property
not comprised in it a very different question is
presented ; namely, whether the receipt of the
property amounts to a ratification of the com-
promise made by Hamilton Pollock. in conse-
quence of which a part of the succession had
been abandoned. To give it this effect would,
we think, be carrying the principle of implied
approbation further than the law will warrant.
If the acceptance of the property, and division
by the heir, had been inconsistent with the
claim for the other portions of the estate, as
if the part divided had been received in place
of that given up, there would have been more
ground to have presumed this acquiescence ;
but whether the act were ratified or not, the
objects sold and partaken made a part of the
estate, and had to be divided. The partition
therefore of what clearly belonged to the suc-
cession cannot be considered as ratifying an
abandonment which one of the heirs had made
of a part of it ; *nemo facile presumitur donare :*
and we do not see that there is any good rea-
son why that rule should not receive an app

East'n District.
March, 1824.

KILGOUR
vs.
RATCLIFF'S
HEIRS.

cation when the surrender of a right is inferred from the acts of the representative, who was interested in giving a sanction to a proceeding in which he had excceeded the authority vested in him. For, although he may be presumed to have had a strong interest, and consequently a great desire to confirm the transaction; this very circumstance furnishes the strongest ground why the effect of his proceedings should be limited to what he has expressly done, or what clearly and necessarily results from the measures to which he resorted: before dismissing this part of the subject it is necessary to notice a receipt found in the record, by which the attorney for the absent heirs acknowledged that the amount stated in the partition, was in full for all claims which the persons he represented had in the succession. In giving such a receipt he exceeded his authori y. An attorney, appointed to give validity to an act of partition, has not the power to renounce the right of the absentee to property not divided. His authority is limited to see the partition legally executed, in respect to the matters comprised in it.

In addition to the 24 bales of cotton which the plaintiff shews were illegally abandoned by

East'n District.
*March*, 1824.

KILGOUR
*vs.*
RATCLIFF'S
HEIRS.

Hamilton Pollock, they claim also the differ-
ence in value between the amount of the pro-
perty partitioned in the court of probates, and
that recovered by the judgment of the district
court; but they have failed in placing that claim
on any grounds which enable us to sanction it.
The decree of the court was, that the defend-
ants should surrender certain property, or pay
a value which, the jury in their verdict, and
the court afterwards, thought proper to affix
to it. It was a compliance with this judgment
to surrender the specific objects enumerated,
and a division of these objects afterwards, pre-
vents any claim for their value. It would be
quite unfair to have both the thing, and the
price of it. Neither is the demand for the ne-
gro said not to be included in the partition sus-
tained. A reference to the evidence, at page
85 of the record shows, that one of the slaves
died after the rendition of the judgment, and
subsequent to the delivery by Hamilton Pol-
lock. We are unable to perceive, after a strict
examination of the record, that any part of the
property received by him was undivided; ex-
cept the horse and stock of hogs, the right of
the plaintiff to which, cannot be distinguished,
from the cotton already mentioned.

VOL. II. (N. S.)  39

East'n District.
March, 1825.

KILGOUR
vs.
RATCLIFF'S
HEIRS.

The cause was submitted to a jury in the court below, who found a general verdict for the defendants. On what grounds we do not know, perhaps from a feeling that on the merits, the justice and equity of the case were with the defendants, and that the hardship was great, in calling on them to satisfy a judgment, which they had already surrendered property in discharge of That juries frequently decide from these impressions without testing each particular point in a case by the law that governs it, and distinguishing accordingly, we have no doubt; nor is it perhaps to be regretted that they do, it being one of the benefits of this mode of trial " that the heart often feels what the head cannot explain." Be that as it may, a colder duty devolves on this court : the obligation on us is imperative, not to suffer the law under which the citizen holds his property to be sacrificed to our notions of equity. If this had been a question of damages, fraud, or error, or depending on the weight to be attached to testimony, we should not disturb the verdict. But the facts are clear, the only thing disputed is the law, and so far as it is found to favour the pretensions of either it must have its effect.

East'n District.
*March*, 1824.

KILGOUR
*vs.*
RATCLIFF'S
HEIRS.

The one half of the value of the cotton and the horse and stock of hogs, appears on reference to the verdict of the jury, and the judgment in the first case, to be eleven hundred and sixty-eight dollars and fifty cents.

It is therefore ordered, adjudged, and decreed, that the judgment of the district court be annulled, avoided, and reversed, and proceeding to give such judgment as in our opinion ought to have been given. It is ordered, adjudged, and decreed, that the plaintiff receive of the defendants the sum of eleven hundred and sixty-eight dollars and fifty cents, with costs in both courts.

*Woodruff* for the plaintiff, *Watts & Lobdell* for the defendants.